**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

NEW YORK COMMERCIAL BANK,

        Plaintiff,

  v.

PAUL J. PULLO and GENE V. PULLO,

        Defendants.

----------------------------------------------------------------X

**NOT FOR PUBLICATION**

Case No. 12-02052 (BRL)

APPEARANCES:

LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
Telephone:   (212) 407-4000
Facsimile:   (212) 407-4900
<u>By</u>:   William M. Hawkins
       Sara J. Crisafulli

*Attorneys for Plaintiff New York Commercial Bank*

SILVERMAN ACAMPORA LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone:   (516) 479-6300
Facsimile:   (516) 479-6301
<u>By</u>:   Lon J. Seidman

*Attorneys for Defendants Paul J. Pullo and Gene V. Pullo*

Before: Hon. Burton R. Lifland
United States Bankruptcy Judge

**MEMORANDUM DECISION AND ORDER GRANTING MOTION OF PLAINTIFF NEW YORK COMMERICAL BANK FOR ABSTENTION AND REMAND AND DENYING AS MOOT MOTION OF DEFENDANTS PAUL J. PULLO AND GENE V. PULLO FOR TRANSFER OF VENUE**

In the instant action, this Court is serving as a judicial traffic controller – the only question before it is whether this proceeding should be directed to the state court uptown or the bankruptcy court across the river.

Plaintiff New York Commercial Bank ("Plaintiff" or "Bank") brought this action (the "Action") in the Supreme Court of the State of New York, New York County, Commercial Division (the "State Court") alleging solely state law claims in connection with two guarantee agreements (the "Guarantee Agreements"). Defendants Paul J. Pullo and Gene V. Pullo (the "Defendants" or "Guarantors") removed the Action from the State Court to the United States District Court for the Southern District of New York (the "District Court") pursuant to 28 U.S.C. section 1452 ("Section 1452") and 28 U.S.C. section 1334 ("Section 1334"). The District Court then referred the Action to this Court. Thereafter, the Defendants filed a timely motion (the "Transfer Motion") (Dkt. No. 5) to transfer the venue of this Action from this Court to the United States District Court for the Eastern District of New York (the "EDNY District Court") for referral to the bankruptcy court for the Eastern District of New York (the "EDNY Bankruptcy Court"), which is currently overseeing the chapter 11 bankruptcy cases of the shareholder Defendants' companies.[1] The Plaintiff, on the other hand, filed a motion (the "Remand Motion") (Dkt. No. 4) to remand, seeking (i) an order of the Court abstaining from hearing the Action pursuant to Section 1334(c) and remanding the same to the State Court

---

[1] Those companies are the primary obligors on the underlying loans guaranteed by the Defendants pursuant to the Guarantee Agreements.

2

pursuant to Section 1452(b) or, (ii) in the alternative, remanding to the State Court pursuant to the mandatory forum selection provisions in the Guarantee Agreements.

For the reasons stated below and at oral argument, mandatory abstention is warranted pursuant to Section 1334(c)(2). Accordingly, the Remand Motion is GRANTED and the Transfer Motion is DENIED as moot.

## BACKGROUND

The Defendants are the direct or indirect shareholders of Metro Fuel Oil Corp. ("Metro Fuel") and Metro Terminals Corp. ("Metro Terminals"), as well as the exclusive members of Metro Terminals of Long Island, LLC ("Metro Long Island" and, together with Metro Fuel and Metro Terminals, the "Borrowers" or the "Debtors"). *See* Affidavit of Andrew A. Baltz in Support of New York Commercial Bank's Motion for Summary Judgment in Lieu of Complaint [hereinafter "Baltz. Aff."] (Dkt. No. 4), Ex. 1, ¶ 8. The Defendants operate, manage, and otherwise control the operations of each of the Borrowers.[2] *See id.*

On May 4, 2012, the Borrowers entered into the Third Amended and Restated Accounts Financing Agreement and the Third Amended and Restated Covenant Supplement to Amended and Restated Accounts Financing Agreement (collectively, the "Accounts Financing Agreement" or "AFA"). According to the AFA, the Bank agreed to provide the Borrowers with a revolving line of credit (the "Line of Credit") in the maximum principal amount of $55 million with a stated maturity date of December 1, 2013. In addition, the Borrowers executed the Third Amended and Restated Secured Line of Credit Note (the "Promissory Note" and, together with the AFA, the "Loan Documents"). *See* Baltz. Aff., ¶¶ 13–14.

---

[2] The Debtors are a "family-owned energy company, founded in 1942, that supplies and delivers bioheat, biodiesel, heating oil, central air conditioning units, ultra low sulfur diesel fuel, natural gas and gasoline throughout the New York City metropolitan area and Long Island." *See* Reply Memorandum of Law in Further Support of Plaintiff's Motion for Summary Judgment in Lieu of Complaint, (Dkt. No. 11), Ex. A, Declaration Of David Johnston, Chief Restructuring Officer Of The Debtors, In Support Of First Day Pleadings [hereinafter "Johnston Decl."], ¶ 5.

3

On the same date, the Defendants each executed and delivered to the Bank personal guarantees (the "Guarantees" or "Guarantee Agreements"). *See* Baltz Aff., Exs. 6, 7. According to the Bank, the Guarantees specify that the Defendants (i) guaranteed all of the Borrowers' obligations to the Plaintiff including those arising under the Loan Documents, *see* Baltz. Aff., ¶¶ 16–17; (ii) agreed to prompt and complete payment of the Borrowers' indebtedness to the Bank when due, whether at the stated maturity, upon demand, by acceleration, or otherwise, *see* Guarantees, ¶ 1(a); (iii) waived, *inter alia*, any defenses in law or equity which would release the obligations of the Guarantors, at least until the debt pursuant to the Loan has been paid in full, *see id.* ¶ 7; and (iv) agreed to a forum selection clause specifying that the Guarantors could not object to the Bank's choice of forum, *id.* ¶ 16.

By letter dated July 24, 2012, the Bank advised the Borrowers that their non-compliance with the Accounts Financing Agreement constituted events of default under the AFA, other related documents, and applicable law. *See* Baltz. Aff., ¶ 25. In another letter, dated September 12, 2012, the Bank advised the Borrowers and Guarantors that the events of default remained outstanding and in effect, and notified them that the entire amount of indebtedness of the Borrowers to the Bank under the Line of Credit (the "Line of Credit Debt" or the "Debt") had become immediately due and payable in full to the Bank. *See id.* ¶ 27. In the same letter, the Bank demanded that the Borrowers and Guarantors jointly and severally pay the full amount of the Debt by September 13, 2012. *See id.* ¶ 28.

On September 27, 2012, the Borrowers filed a Chapter 11 petition in the EDNY Bankruptcy Court, seeking a sale of substantially all of their assets in their bankruptcy case. *See* Johnston Decl., ¶ 23 ("Indeed, the Existing Lenders sole interest appears to be the fire sale liquidation of the Debtors. Accordingly, the Debtors have no choice but to file bankruptcy to

4

preserve the value of their businesses and pursue an expedited bankruptcy sale process for the benefit of all parties."). The EDNY Bankruptcy Court entered a final order allowing at least certain of the Bank's claims for the Line of Credit Debt and determining the validity and amount of the Line of Credit Debt. *See* Final Order (A) Authorizing Post-Petition Financing, (B) Authorizing use of Cash Collateral, (C) Granting Adequate Protection and (D) Granting Related Relief [hereinafter the "DIP Order"], (Bankr. E.D.N.Y., No. 12-46913, Dkt. No. 187), ¶ 5(p). On February 5, 2013, that court heard the Bank's motion to convert the case to a Chapter 7 given the Debtors' alleged ongoing "fail[ure] to make any asset sale, despite their extremely expensive sale process." *See* Conversion Motion,[3] ¶ 3.

As of September 30, 2012, the unpaid balance due and owing on the Line of Credit Debt totaled approximately $32 million. On October 2, 2012, the Bank commenced an action (the "State Court Action") in the New York State Court seeking an order, pursuant to New York Civil Practice Law and Rules section 3213 ("CPLR Section 3213"), granting the Plaintiff summary judgment against the Guarantors for the Line of Credit Debt.

On October 12, 2012, the Guarantors removed the Action, which was subsequently referred to this Court. On February 7, 2013, this Court held a hearing on the Remand Motion, and the Transfer Motion.

## DISCUSSION

The Bank argues that the Action should be remanded to the State Court because (i) removal of the State Court Action from the State Court to the District Court, and ultimately to this Court, is not permissible because the federal courts lack subject matter jurisdiction over the

---

[3] Motion Of New York Commercial Bank For (A) Conversion Of The Debtors' Cases To Chapter 7 Pursuant To 11 U.S.C. § 1112(B), (B) Stay Relief Pursuant To 11 U.S.C. §§ 362(D)(1) And (D)(2) To Enforce Rights Against Property Of Debtors And Collect Indebtedness Owed By Debtors, And (C) For Prohibition Of The Further Use Of Any Cash Collateral [hereinafter "Conversion Motion"] (E.D.N.Y. Bankr., No. 12-46913, Dkt. No. 329.

5

Action, (ii) mandatory abstention is warranted pursuant to Section 1334(c)(2), (iii) discretionary abstention and remand are appropriate under Sections 1334(c)(1) and 1452(b), and (iv) the forum selection clauses in the Guarantee Agreements mandate that the State Court adjudicate the Action.  The Defendants counter these contentions and, in their Transfer Motion, suggest that the Action should be transferred to the EDNY Bankruptcy Court.  The Court finds that while removal is permissible because the EDNY Bankruptcy Court has subject matter jurisdiction, (a tenuous related-to jurisdiction), over the Action, remand is warranted in light of mandatory abstention.  Accordingly, the Court need not address the other arguments or the Transfer Motion.

## I. REMOVAL

As a preliminary matter, the Plaintiff challenges the removal of the Action, asserting that the Action must be remanded because the Defendants have failed to demonstrate that the federal courts have jurisdiction over the State Court Action, which must therefore be remanded.  *See Joremi Enter., Inc. v. Hershkowitz (In re New 118th LLC)*, 396 B.R. 885, 890 (Bankr. S.D.N.Y., Nov. 13, 2008) (indicating, "the district court, and hence, the bankruptcy court, must remand any removed claim or cause of action over which it lacks subject matter jurisdiction."); *see also Post Investors LLC v. Gribble*, No. 12-CIV-4479, 2012 WL 4466619, *2 (Bankr. S.D.N.Y., Sept. 27, 2012) ("Any civil action brought in state court may be removed to the federal district court that embraces the state court only if the federal courts have original jurisdiction over the matter.  When challenged, the party seeking removal bears the burden of establishing this jurisdiction.").  In particular, the Bank asserts that the Defendants have not proven that the EDNY Bankruptcy Court has "related to" jurisdiction over the Action pursuant to Section 1334(b).

Whether a court has "related to" jurisdiction over a proceeding depends on whether "the outcome of that proceeding could *conceivably have any effect* on the estate being administered in bankruptcy," including any outcome that could "alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Blackacre Bridge Capital LLC v. Korff (In re River Ctr. Holdings, LLC)*, 288 B.R. 59, 64–65 (Bankr. S.D.N.Y. 2003) (citations omitted) (emphasis altered). In the context of litigation involving non-debtors, if the estate has an obligation to indemnify a non-debtor party, there is "related to" jurisdiction where that obligation "has a reasonable legal basis." *Id.* at 65 (citations and quotations omitted). In other words, that obligation need not be certain, as contingent outcomes can satisfy the "conceivable effects" test, so long as there is the *possibility* of an effect on the estate. *See Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*, No. 11-CIV-2232, 2011 WL 4965150, *4 (S.D.N.Y. Oct. 19, 2011); *see also Hickox v. Leeward Isles Resorts, Ltd.*, 224 B.R. 533, 538 (S.D.N.Y. 1998) (finding "related to" jurisdiction because it was possible that the debtor would have to repay outstanding debt on a loan on behalf of a third-party defendant to a state court action concerning that debt).

Here, the State Court Action has a conceivable effect on the administration of the EDNY bankruptcy case, as there is "at least a reasonable legal basis" for the conclusion that the Debtors might have to indemnify the Defendants insofar as they repay the Bank on behalf of the Debtors. *See In re River Ctr. Holdings*, 288 B.R. at 65. Indeed, the Guarantee Agreements facially contemplate that claims against the Debtors can arise from the Guarantors' repaying any balance on the Loan that the Debtors are unable to pay. *See* Guarantee Agreements, ¶ 14 (indicating the Guarantors can obtain claims in the bankruptcy case as a result of their repaying the Debtors' obligations to the Bank); *see also id.* ¶ 9 (setting out that the Guarantors can be subrogated in

7

place of the Bank once the latter is paid). Moreover, the Bank does not challenge the *possibility* of the Debtors being subjected to indemnification claims arising from the Guarantors' repayment of the Debt. *See* Reply Memorandum of Law in Further Support of Defendants' Motion to Transfer Venue to the Eastern District of New York (Dkt. No. 14), pp. 10–11 (indicating only that the Guarantors waived their rights to subrogation or indemnification from borrowers *until* the Bank is repaid).

Therefore, given the above, removal of the Action is appropriate, as the federal courts have jurisdiction over the same.

## II.   ABSTENTION AND REMAND

"When presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand." *See Callen v. Callen*, 827 F. Supp. 2d 214, 215 (S.D.N.Y. 2011). With respect to the Remand Motion, the *Defendants do not contest whether the first five conditions of mandatory abstention under Section 1334(c)(2) have been met.*[4] The parties dispute only whether the action can be "timely adjudicated" in state court.

The Second Circuit has identified four factors used to evaluate whether an action can be timely adjudicated:

> (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state

---

[4] A court must abstain pursuant to Section 1334(c)(2) if the following six conditions are satisfied:

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be "timely adjudicated" in state court.

*In re Bradlees Stores, Inc.*, 311 B.R. 29, 34 (Bankr. S.D.N.Y. 2004); *see also Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446–47 (2d Cir. 2005) (specifying that principles of mandatory abstention apply to removed actions).

8

law claims are related; and (4) whether the state court proceeding would prolong the administration of the estate.

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 266 (2d Cir. 2012). Each of these factors weighs in favor of abstention.

### *1. Factor #1: Backlog*

In evaluating and comparing the backlog of the State Court with that of the EDNY Bankruptcy Court, this Court must consider "the particular factual and procedural circumstances presented in the two courts being compared." *Post Investors*, 2012 WL 4466619, at *5 (quotations omitted); *see also Allstate*, 2011 WL 3628852, at *9 (holding that the party opposing abstention bears the burden of proof on the timeliness element). Therefore, the party challenging abstention must show, through "actual evidence," "that the backlog of cases is significantly different" in the two relevant tribunals. *Id.* The inquiry, however, "does not *turn exclusively on* whether an action could be adjudicated most quickly in state court," rather it is "*informed by* the comparative speeds of adjudication in the federal and state forums." *Parmalat*, 639 F.3d at 580 (emphasis added).

The Defendants have failed to meet their burden in this regard for two reasons. First, the Defendants have not presented a clear reason to believe the Action might proceed more slowly before the State Court than it would before the EDNY Bankruptcy Court. They have not shown any disparity between those courts' relative backlog of cases. Furthermore, the Bank commenced the State Court Action by moving for summary judgment in lieu of complaint under CPLR Section 3213, which provides for an *accelerated* judgment.[5] *See Weissman v. Sinorm Deli, Inc.*, 88 N.Y.2d 437, 443 (1996) (indicating that CPLR Section 3213 provides "quick relief on documentary claims so presumptively meritorious that 'a formal complaint is superfluous'").

---

[5] The Action has been fully briefed by the parties and is ready to be adjudicated by the State Court upon remand.

9

Finally, courts in this district have previously found, in cases similar to the one at hand, that the New York State Supreme Court can timely adjudicate guarantee claims. *See, e.g.*, *Post Investors*, 2012 WL 4466619, at *6; *In re New 118th LLC*, 396 B.R. at 894; *see also Allstate*, 2011 WL 4965150, at *8 (concluding the state court constitutes a "timely" forum for the adjudication of fraud and negligent misrepresentation, as there is "no foreseeable significant difference in the comparative speeds of adjudication" between these two courts).

The Defendants' counterarguments regarding the relevant courts' backlogs are unpersuasive. In particular, they contend that the EDNY Bankruptcy Court can adjudicate the State Court Action "just as quickly if not more quickly than the State Court can," because the former, having presided over the bankruptcy case for several months, is more familiar with issues concerning the Line of Credit Debt than the State Court. *See* Memorandum of Law in Opposition to Plaintiff's Motion for Abstention and Remand (Dkt. No. 12) [hereinafter "Opposition"], p. 5. But, the Defendants "have not articulated any plausible way in which th[e] action will affect the efficient administration of the [bankruptcy] estates." *Sealink Funding Ltd. v. Bear Sterns & Co. Inc.*, No. 12-CIV-1397, 2012 WL 4794450, *4 (S.D.N.Y. Oct. 9, 2012). Indeed, they have not argued that the EDNY Bankruptcy Court has presided over any issue connected with the Guarantee Agreements, will preside over any such issue, or has any familiarity with those agreements, which are at the heart of the State Court Action. *See also* DIP Order, ¶ 5(p) (including stipulation between the Borrowers and the Plaintiff concerning the allowance of claims regarding the Debt). In addition, by admitting that the EDNY Bankruptcy Court can adjudicate this Action "just as quickly" as the State Court can, the Guarantors concede that the timely adjudication element is satisfied in favor of abstention and remand. Finally, this

argument is not dispositive because timely adjudication does not turn exclusively on whether an action could be adjudicated "most quickly in state court." See *Parmalat*, 671 F.3d at 266.

Second, remanding the Action to the State Court, as opposed to transferring it to the EDNY District Court, provides a more direct route for the parties to obtain a final adjudication on the merits. Were the Action to be remanded, the Plaintiff's summary judgment motion would be promptly submitted to the State Court for *final* judgment. In contrast, as the Defendants concede, the EDNY Bankruptcy Court's adjudication of the Action would not be final; instead, that adjudication would be limited to proposed findings of fact and conclusions of law, which would then be subject to *de novo* review by the EDNY District Court before entry of any final judgment. See *Mt. McKinley Ins. Co.*, 399 F.3d at 448 (citing, 28 U.S.C. § 157(c)(l)); *see also* Plaintiff's Rule 9027 Statement, (Dkt. No. 2) ("Plaintiff does not consent to the entry of final orders or judgments in the Action by the bankruptcy judge.").

In this regard, the Defendants counter by citing *Hickox v. Leeward* in support of the following contentions: (i) the EDNY Bankruptcy Court has "a better [first] vantage point" from which to make proposed findings of fact and conclusions of law concerning the Action than does the State Court, and (ii) the EDNY District Court's possible *de novo* review cannot serve as a basis for denying transfer to the EDNY Bankruptcy Court. 224 B.R. at 539–40. *Hickox*, however, is inapposite.[6] There, the defendant company moved to transfer proceedings to this Court. *Id.* The District Court granted that motion because it found this Court was significantly more familiar with the relevant issues, as it had (i) adjudicated, over several years, litigation concerning matters critically related to those pending before the state court, (ii) appointed a mediator to investigate the business records and transactions of the numerous, interconnected,

---

[6] As an initial matter, *Hickox* is distinguishable because the portions the Guarantors cite concern only whether transferring under 28 U.S.C. section 157(a) is warranted for reasons of judicial economy, not whether abstention is mandatory under Section 1334(c)(2).

11

relevant entities, and (iii) reviewed and integrated that mediator's findings in an approved plan. *Id.* at 540. As a result, the District Court found that this Court had a "better vantage point" than the state court, and that, if the District Court denied transfer to this Court—which so clearly had such a vantage point—solely on the basis of possible future *de novo* review of the Court's findings, then the District Court would never be able to transfer matters to the bankruptcy court. *Id.* In contrast, here, the EDNY Bankruptcy Court has presided over the bankruptcy for only a few months and has not made a determination regarding the Guarantees. In sum, the Defendants have not presented anything suggesting that court has a better vantage point.

The first factor therefore weighs in favor of abstention.

### 2. *Factor #2: Complexity & Expertise*

The second factor weighs in favor of abstention as well, as the Defendants have not demonstrated that the EDNY Bankruptcy Court possesses a relevant advantage. "Where the legal issues in a case are especially complex, the forum with the most expertise in the relevant areas of law may well be expected to adjudicate the matter in a more timely fashion relative to the other forum." *Parmalat*, 639 F.3d at 580–81; *see also Post Investors*, 2012 WL 4466619, at *5 ("The New York Commercial Division has the expertise to address complex issues relating to guarantor liability under New York law . . ."); *In re New 118th LLC*, 396 B.R. at 895 (finding that "the state court is as equally capable as this Court in liquidating" guarantee claims).

The issues in the Action are essentially limited to those arising in connection with the validity of the Guarantees and the Defendants' waivers of all defenses to liability thereunder (none of which have been raised or addressed in the EDNY bankruptcy case). Therefore, the Action solely concerns New York state law regarding guarantor liability. Moreover, the Defendants have not persuaded the Court that the State Court "lacks the expertise to adjudicate

12

these cases, or that they [will progress] slowly through the state court system." *Allstate*, 2011 WL 4965150, at *10.

Therefore, the second factor weighs in favor of abstention.

### 3. *Factor #3: Status of the Bankruptcy Case*

With respect to the third factor, the status of the title 11 bankruptcy case to which the state law claims are related, the Court "must consider whether the litigants in a state proceeding need the state law claims to be quickly resolved as a result of the status of the ongoing title 11 bankruptcy proceeding." *Parmalat*, 639 F.3d at 581. In particular, a trustee in a Chapter 11 reorganization could require "expeditious resolution of the state law claims in order to determine what resources are available to fund the chapter 11 reorganization." *Id.* In addition, "where a Chapter 11 reorganization is pending, the court must be sensitive to the needs of the debtor attempting to reorganize." *In re New 118th LLC*, 396 B.R. at 894.

Here, the Chapter 11 case does not involve a complex reorganization, as the Borrowers seek a sale of substantially all of their assets. *See* Johnston Decl., ¶ 23. In fact, there is a possibility that case will be converted to Chapter 7, *see* Conversion Motion, p. 3, as the EDNY Bankruptcy Court recently held a preliminary hearing regarding the Conversion Motion, on February 5, 2013. Finally, nothing compelling has been shown to demonstrate that continuation of the State Court Action will adversely impact on the administration of the pending case in the EDNY bankruptcy case.

Accordingly, this factor also weighs in favor of abstention.

13

### *4. Factor #4: Prolong Administration*

Finally, with respect to the fourth factor, "[a] matter cannot be timely adjudicated in state court if abstention and remand of the state law claims will unduly prolong the administration of the estate." *Parmalat*, 639 F.3d at 581. This factor also weighs in favor of abstention.

The Guarantors contend that the State Court Action will negatively affect the efficient administration of the bankruptcy estate because the Line of Credit Debt may be "at issue" in the EDNY bankruptcy cases. *See* Opposition, p. 9. This assertion does not demonstrate that the State Court Action will prolong the administration of the estate. Indeed, whether the *Debt* might be "at issue" in the EDNY Bankruptcy Court does not prove the State Court Action concerning the *Guarantees* will affect the administration of the estate. Even if the Defendants obtain indemnification claims against the Borrowers, they expressly waived all possible rights to subrogation or indemnification from the Borrowers "until the final indefeasible payment and satisfaction of all claims and demands due" to the Plaintiff. *See* Guarantee Agreements, ¶ 9. In other words, those indemnification claims could only substantially replace the Plaintiff's claims. Furthermore, the Bank acknowledges that its claims in the bankruptcy case would be reduced by an amount equal to the sum that the Plaintiff receives from the Guarantors, which is likely to be the same amount that the Defendants would likely assert under an indemnification or contribution theory.

*&ast; &ast; &ast;*

As mandatory abstention under Section 1334(c)(2) is warranted, the Court need not address the Plaintiff's arguments for permissive abstention and equitable remand under Sections 1334(c)(1) and 1452(b) or regarding the forum selection clauses. *See Allstate*, 2011 WL 4965150, at *10 (finding mandatory abstention was warranted and therefore declining to rule on

14

discretionary abstention). In turn, the Court denies as moot the Defendants' Transfer Motion. *See Callen*, 827 F. Supp. 2d at 215.

## CONCLUSION

The Remand Motion is GRANTED. The Clerk of Court is directed to remand this proceeding to the Supreme Court of the State of New York, New York County, Commercial Division. The Transfer Motion is, accordingly, DENIED as moot.[7]

**IT IS SO ORDERED.**

Dated:  New York, New York                                   /s/ Burton R. Lifland
       February 7, 2013                                           United States Bankruptcy Judge

---

[7] The foregoing is limited to the Remand Motion and the Transfer Motion before this Court. To the extent the Defendants consider that they are essential to the ongoing administration of the Chapter 11 reorganization before the EDNY Bankruptcy Court, they are not precluded by this decision from seeking appropriate relief pursuant to sections 105 or 362 of the Code or other applicable law from that court.